SC:TDK

# MO9-0425

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

RACHID BOUSSEBA and
ABDEL KHALEK LAZREG,

        Defendants.

- - - - - - - - - - - - - - - - - -X

C O M P L A I N T

(T. 21, U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK, SS:

Vincent Parlatore, being duly sworn, deposes and says
that he is a Special Agent with United States Immigration and
Customs Enforcement ("ICE"), duly appointed according to law and
acting as such.

Upon information and belief, on or about April 29,
2009, within the Eastern District of New York and elsewhere, the
defendants RACHID BOUSSEBA and ABDEL KHALEK LAZREG, together with
others, did knowingly and intentionally conspire to distribute
and possess with intent to distribute a substance containing
cocaine, a Schedule II controlled substance, in violation of
Title 21 U.S.C. § 841(a)(1).

(Title 21, United States Code, Section 846).

The source of your deponent's information and the
grounds for his belief are as follows:[1]

---

[1]   Because the purpose of this affidavit is merely to establish
probable cause, I have not set forth all of the facts and

1.     Pursuant to an on-going joint investigation between the Drug Enforcement Administration ("DEA") and Immigration and Customs Enforcement ("ICE"), a co-conspirator of defendants BOUSSEBA and LAZERG ("CC-1") told a cooperating witness[2] ("the CW"), in November 2008, that he could provide the CW with cocaine in kilogram quantities.  In furtherance of this investigation, the CW introduced CC-1 to an undercover ICE agent (the "UC") on December 2, 2008.  At the December 2, 2008 meeting, which was recorded, the UC expressed interest in purchasing kilogram quantities of cocaine from CC-1.  After that meeting, it was agreed that CC-1 would contact the UC at a later date to complete the transaction for the cocaine.

2.     On or about April 29, 2009, CC-1, in a series of recorded telephone calls, told the UC that he was prepared to sell the UC a kilogram of cocaine and that he would have the cocaine ready that evening.  CC-1 further instructed the UC that both the UC and the CW should go to 30-32 31st Street in Astoria, Queens that evening to purchase the cocaine.  The UC responded by telling CC-1 that the CW would first arrive at 30-32 31st Street alone, view the drugs, and only then call the UC to take part in

---

circumstances of which I am aware.

[2] In March 2008, the CW pleaded guilty pursuant to a cooperation agreement with the government and has provided information which has been verified and proven reliable during the course of this and other investigations.

the transaction.   CC-1 agreed to that plan.

3.    At approximately 9:00 p.m. that night, the CW, under the supervision of agents, arrived in front of 30-32 31st Street.   A short time later, CC-1 entered the CW's car at which point CC-1 received a phone call.   After the phone call CC-1 told the CW that the drugs would be arriving shortly.

4.    At approximately 9:30 p.m., CC-1 received another phone call, and stated to the CW that the drugs had arrived.   CC-1 exited the CW's car and entered 30-32 31st Street, a residential apartment building.   A short time later, CC-1 returned to the CW's car in possession of a yellow envelope.   At this time, agents arrested CC-1, who immediately cooperated with the law enforcement officers.   The package was recovered by DEA agents who field-tested its contents.   The white powdery substance inside of the envelope tested positive for cocaine.

5.    After CC-1 was arrested, CC-1 immediately told agents that CC-1 had come from an apartment inside of 30-32 31st Street where CC-1 had retrieved the drugs.   CC-1, along with agents, then entered the building and proceeded to climb the stairs toward the apartment.   At that time, CC-1 and the agents encountered defendant ABDEL KHALEK LAZREG in the stairwell, who CC-1 told the agents was involved in the narcotics transaction. The agents then placed LAZREG under arrest.

6.    After LAZREG was placed under arrest, the agents

3

were directed by CC-1 to the apartment where CC-1 had received the cocaine from LAZREG.  The agents found the apartment empty. The agents then searched the rooftop, where they discovered defendant RACHID BOUSSEBA, hiding barefoot.

7.  Following the arrest, CC-1 was given Miranda warnings and waived his right to be silent.  CC-1 stated that although CC-1 did not have direct access to cocaine, CC-1 knew that BOUSSEBA did have access to cocaine and told BOUSSEBA earlier that day (April 29, 2009) to arrange a narcotics transaction.  CC-1 then stated that BOUSSEBA told CC-1 that the narcotics would be arriving at BOUSSEBA's apartment later that night, and, as a result, CC-1 instructed the CW to come to 30-32 31 Street at approximately 9:00 p.m., where BOUSSEBA lived.  CC-1 further stated that at approximately 9:00 p.m. that night, CC-1 met with the CW outside of 30-32 31 Street.  At approximately 9:30 p.m., CC-1 received a telephone call from BOUSSEBA who informed him that LAZREG had arrived with the cocaine and further instructed CC-1 to come up to his apartment to pick up the cocaine.  CC-1 further told agents that once CC-1 entered the apartment, CC-1 met both BOUSSEBA and LAZREG at which time LAZREG produced the yellow envelope containing the cocaine.  CC-1 also stated that CC-1 then took the package and gave it to the CW.

8.  Following his arrest, BOUSSEBA was also given Miranda warnings and proceeded to waive his right to be silent.

BOUSSEBA admitted to agents that he helped CC-1 obtain a kilogram of cocaine. Specifically, BOUSSEBA stated that he was asked by CC-1 whether he could help CC-1 obtain a kilogram of cocaine, to which BOUSSEBA responded that he would. BOUSSEBA then stated that he contacted LAZREG on the morning of April 29, 2009 and told him that someone was interested in purchasing a kilogram of cocaine from him. BOUSSEBA stated that LAZREG told him he could obtain a kilogram of cocaine. BOUSSEBA then stated that LAZREG called him later in the day and stated that he would bring a kilogram of cocaine to BOUSSEBA's apartment at approximately 9:00 p.m. that night (April 29, 2009). At approximately 9:30 p.m., LAZREG arrived at his apartment in possession of the kilogram of cocaine. Once the drugs had arrived, BOUSSEBA contacted CC-1 and told CC-1 to come up to his apartment. BOUSSEBA further stated that he was to be paid a finder's fee from CC-1 and that LAZREG was to be paid in excess of $33,000 from the proceeds of the narcotics sale.

WHEREFORE, your deponent respectfully requests that the defendants ABDEL KHALEK LAZREG and RACHID BOUSSEBA be dealt with according to law.

Vincent Parlatore
Special Agent
U.S. Bureau of Immigration and
Customs Enforcement

Sworn to before me this
30th day of April, 2009

6