UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

D/F

-----------------------------------------------------------------X
ABDEL KHALEK LAZREG,

                Petitioner,                          **MEMORANDUM & ORDER**

                                                                   09-CR-00399 (NGG)
-against-

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On December 1, 2009, Petitioner Abdel Khalek Lazreg pleaded guilty to count one of a two-count indictment for conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(ii)(II). (See Official Tr. of Plea Proceedings at 20:16-25; 21:1-25 (Dkt. 39).) On June 14, 2017, Petitioner filed this motion to vacate his 2009 conviction. (See Pet'rs Mot. to Vacate J. of Conviction ("Mot.") (Dkt. 45-1).)

In light of the fact that Petitioner has fully served his sentence under a federal felony conviction, the court construes this motion to vacate as a petition for a writ of coram nobis. See U.S. v. Loschiavo, 531 F.2d 659, 662 (2d Cir. 1976) (where petitioner completed his federal sentence and sought relief under 28 U.S.C. § 2255, the petition was properly treated as writ of coram nobis under 28 U.S.C. § 1651(a)). The district court has the power to vacate its judgment of conviction and sentence after the expiration of the full term of its service through a writ of coram nobis. See United States v. Morgan, 346 U.S. 502, 512-13 (1954) (finding that a defendant has the opportunity to show that his conviction is invalid after he fully served his sentence because the results of a conviction may still persist after a sentence has been served).

For the following reasons, the petition is DENIED.

1

I. **BACKGROUND**

   A. **Procedural History**

On December 1, 2009, Petitioner pleaded guilty before this court to one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(ii)(II). (See Official Tr. of Plea Proceedings at 20:16-25; 21:1-25.) Prior to Petitioner's guilty plea, the prosecutor and federal agents arranged for a proffer meeting with Petitioner and his counsel. (See Mot. at 4, 7.) During this meeting, the parties agreed that Petitioner would plead guilty and cooperate with the government. (See Mot. at 4.) Petitioner assisted government agencies with their then-ongoing investigation of this matter, fulfilling his promise to cooperate. (See Pet'rs Decl. at 7 (Dkt. 45-2).) Although his efforts were unsuccessful, the government described them as "very serious efforts" during Petitioner's sentencing hearing. (See June 14, 2012 Sentencing Tr. (Dkt. 45-4) ("Sentencing Tr.") at 7:20-21.)

On June 14, 2012, Petitioner was sentenced before this court to time served and a three-year period of supervised release. (See June 14, 2012 Min. Entry of Sentencing (Dkt. 34); see also J. (Dkt. 35).) Petitioner did not directly appeal his conviction or sentence, nor did he pursue habeas relief under 28 U.S.C. § 2255.

On July 17, 2016, Petitioner filed a motion to expunge his criminal record on equitable grounds based on the adverse impact of his underlying criminal conviction. (See Pet'rs Mot. to Alter J. ("Mot. to Alter J.") (Dkt. 43).) On September 14, 2016, this court denied Petitioner's motion to expunge his criminal record for lack of subject-matter jurisdiction. (See Sept. 14, 2016 Order ("Sept. 14 Order") (Dkt. 44).)

### B. Instant Motion

On July 14, 2017, Petitioner filed the instant motion to vacate his conviction. (See generally Mot.) On September 15, 2017, the government filed its response to Petitioner's motion. (See Gov't Resp. to Pet'rs Mot. ("Resp. to Mot.") (Dkt. 48).) On December 14, 2017, Petitioner filed its reply in support of its motion to vacate. (See Pet'r Reply. in Supp. of Mot. ("Reply. in Supp. of Mot.") (Dkt. 54).)

Petitioner argues his plea was induced by false, unfilled promises made by the government and thus his conviction should be vacated. (See Mot. at 2.) Specifically, Petitioner claims the government promised to "advise the Immigration Court of his cooperation efforts and testify on his behalf, if needed." (See Mot. at 5.) Petitioner also claims the federal agents advised Petitioner that "he was eligible to receive an S-Visa, which would allow [Petitioner] to legally reside and work in the United States." Id. Petitioner claims he would have never pleaded guilty if the government had not made these promises. Id. at 8.

## II. LEGAL STANDARD

A writ of coram nobis, also referred to as a writ of error coram nobis, is not a substitute for appeal but, rather, an "extraordinary remedy." Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014) (quoting Morgan, 346 U.S. at 511). Relief is typically granted only when a prisoner is out of custody and cannot pursue habeas relief. Id. (citing Porcelli v. U.S., 404 F.3d 157, 158 (2d Cir. 2005)). A writ of coram nobis is "limit[ed] [to] 'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" Du Purton v. United States, 891 F.3d 437, 444 (2d Cir. 2018) (quoting Morgan, 346 U.S. at 511) (citing United States v. Denedo, 556 U.S. 904, 911 (2009)).

3

In evaluating a coram nobis petition, the court presumes that the prior proceedings were correct and the burden rests on the petitioner to show otherwise. Morgan, 356 U.S. at 512. Consistent with these principles, the Second Circuit has set forth a three-prong standard for obtaining coram nobis relief. A petitioner "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Kovacs, 744 F.3d at 49 (citation omitted).

## III. DISCUSSION

### A. Timeliness of Petition

In determining whether to grant coram nobis relief, the court begins its analysis with the second prong of this standard, timeliness, as it is a procedural hurdle to obtain relief. Dixon v. United States, No. 14-CV-960 (KMK), 2015 WL 851794 at *6 (S.D.N.Y. Feb. 27, 2015) (citing U.S. v. Foont, 901 F. Supp. 729, 732-33 (S.D.N.Y. 1995), aff'd, 93 F.3d 76 (1996) (explaining that timeliness of a coram nobis petition is a "threshold issue" that must be resolved before reaching the underlying merits of the claim)). The "critical inquiry" into this standard is "whether the petitioner is able to show justifiable reasons for the delay." Foont, 93 F.3d at 80 (indicating that the doctrine of laches should not be incorporated into the timeliness analysis with respect to a coram nobis petition). The district court is required to decide the issue of timeliness "in light of the individual circumstances of the case." Id. at 79.

Petitioner argues that the motion is timely because he sought relief from this court in July 2016 when he filed a motion to expunge his criminal conviction. (See Reply in Supp. of Mot. at 3; see also Mot. to Alter J.) However, Petitioner still waited over a year and a half after discovering that the United States Citizenship and Immigration Services ("USCIS") could not

4

grant his Form I-360, Violence Against Women Act ("VAWA") Petition[1] before filing his July 2016 motion. (See Mot. to Alter J. at 11.)

Here, Petitioner waited two-and-a-half years after discovering that USCIS could not grant his Form I-360 Petition before seeking coram nobis relief. The court finds that a two-year delay in seeking coram nobis relief to be unjustifiable, particularly given the fact that petitioner completed the term of his supervised release and did not file his petition until discovering that Immigration and Naturalization Service ("INS")[2] denied his application to become a naturalized citizen. Ejekwu v. United States, No. 02-CV-699 (SJ), 2005 WL 3050286, at *3 (E.D.N.Y. Nov. 14, 2005) (reasoning that a two-year delay was untimely without offering any "real justification").

The timeliness of a coram nobis petition is further undermined when a petitioner failed to seek earlier appropriate relief pursuant to 28 U.S.C. § 2255. Foreman v. United States, 247 F. App'x 246, 248 (2d Cir. 2007)[3]; Cisse v. United States, 330 F. Supp. 2d 336, 344 (E.D.N.Y. 2004) (finding a coram nobis petition filed one year after the statute of limitations for relief pursuant to 28 U.S.C. § 2255 had expired to be untimely.) Petitioner does not explain why he failed to file a motion to vacate his sentence under 28 U.S.C. § 2255 within one year of the final judgment of his conviction entered on June 22, 2012. Moreover, Petitioner fails to explain why

---

[1] On January 31, 2015, Petitioner received notice from the USCIS that although he established a prima facie case for his Form I-360 Petition, further action could not be taken by USCIS because Petitioner was unable to adjust his immigration status to that of a Lawful Permanent Resident due to his criminal conviction. (See Mot. to Alter J.).

[2] USCIS is an entity within the Department of Homeland Security that was created in 2003. It has absorbed the functions of the federal agency formerly known as the Immigration and Naturalization Services. Aguire v. Best Care Agency, Inc., 961 F. Supp. 2d 427, 433 n.4 (E.D.N.Y. 2013).

[3] Here, the applicable one-year statute of limitations for applying to a motion under 28 U.S.C. § 2255 is from "the date on which the judgment conviction bec[a]me[ ] final" or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1); 28 U.S.C. § 2255(f)(4).

5

he did not seek appropriate relief within one year of receiving the notice of his removal on March 7, 2013, the point at which Petitioner should have realized the alleged promises made by the government to assist Petitioner with his immigration status would not be fulfilled. (See Pet'rs Decl. at 8, 9.) Given these facts, the court ultimately finds this petition untimely and thus barred.

### B. Fundamental Error

In finding that Petitioner failed to meet the second prong's procedural threshold, the court need not return to the first prong, namely that Petitioner demonstrate "circumstances compelling such action to achieve justice." Kovacs, 744 F.3d at 49. Nonetheless, the court also finds that Petitioner has failed to meet this standard. As stated, coram nobis relief is limited to errors "of the most fundamental character." Du Purton, 891 F.3d at 440 (quoting United States v. Mayer, 235 U.S. 55, 69 (1914)). Petitioner claims that his guilty plea was induced by false promises made by the government and thus was involuntary. This is an error of such magnitude that would entitle Petitioner to coram nobis relief. Machibroda v. United States, 368 U.S. 487, 493 (1962) (holding "there can be no doubt" that a conviction based on an involuntary plea is subject to collateral attack); Santobello v. New York, 404 U.S. 257, 262 (1971) (finding a guilty plea to be involuntary if induced by an unfilled promise made by a prosecutor). Petitioner, however, has failed to demonstrate that his plea was involuntary.

A plea is voluntary if the defendant is "fully aware of the plea's direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . unless induced by threats . . . misrepresentation . . . [ ] or by promises that are by their nature improper." Cekaj v. United States, No. 14-CV-03004 (GBD), 12-CR-00600 (GBD), 2016 WL 35495, at *3 (S.D.N.Y. January 25, 2016) (quoting Brady v. United States, 397 U.S.

742, 755 (1970)). "[A] defendant's mistaken subjective impressions gained from conferences with his legal counsel, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds to set aside his guilty plea." United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1098 (2d Cir. 1972) (citing United States ex rel. LaFav v. Fritz, 455 F.2d 297 (2d Cir. 1972)). The Second Circuit has extended this principle to apply to any petition based on subjective impressions. Id. A petitioner bears the burden of demonstrating that such proof existed at the time of his plea. Id.

Here, Petitioner acknowledges that he was aware of the immigration consequences that would arise from his guilty plea, namely that he would be subject to removal from the United States. However, Petitioner claims he would not have pleaded guilty had the government not promised to assist him with his immigration status. (See Pet'r Decl. at 9; see also Mot. at 8). Specifically, Petitioner alleges that the government advised Petitioner that his cooperative efforts would qualify him to receive an S-Visa[4] and promised to advise the immigration court of his cooperative efforts as well as testify on Petitioner's behalf if needed during his immigration proceedings. (See Mot. at 5.) Petitioner does not offer any evidence, let alone substantial evidence, to demonstrate that these alleged oral promises were made. Moreover, Petitioner does not offer evidence to show that he made any efforts to get the government to fulfill any of these alleged promises after receiving notice that he was subject to removal.

At Petitioner's plea hearing, the court inquired into the voluntariness of Petitioner's plea and specifically asked Petitioner whether any other promises had been made outside of the plea

---

[4] A non-immigrant S Classification is an individual who assisted a law enforcement agency as an informant. A request for S non-immigration status can only be initiated by the United States Attorney's office or a state or federal law enforcement agency. A non-citizen that receives this status may apply to withhold removal proceeding, however the non-citizen must obtain permanent resident status before instituting such proceedings. See 8 C.F.R. § 236.4.

7

agreement to induce Petitioner's plea. "Statements made at a plea allocution carry a strong presumption of veracity." United States v. Khan, 328 F. App'x 704, 706-07 (2d Cir. 2009) (quoting U.S. v. Doe, 537 F.3d 204, 213 (2d Cir. 2008)) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1997). The record is as follows:

> THE COURT: Now, I have in front of me an agreement in United States versus Abdel Khalek Lazreg, 09-CR-399. It's marked as Court's Exhibit 1. It's dated today, December 1st, 2009. It consists of six pages. I am going to hand it up the defendant and his attorney and ask some questions. Mr. Lazreg, have you read this document?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you discussed it with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has he answered any and all questions that you had about it?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand your rights and your obligations under this agreement?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Mr. Paul, in your view, does your client understand his rights and his obligations under this agreement?

MR. PAUL: He does, Your Honor.

THE COURT: On page 6 of the agreement, please turn to that. Mr. Lazreg, is that your signature by your name?

THE DEFENDANT: Yes, sir.

THE COURT: Did you sign the agreement today?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Paul, you also executed the agreement?

MR. PAUL: I have.

THE COURT: And the government has executed the agreement?

MR. KAMINSKY: Yes, Your Honor.

THE COURT: Very well. Please return the agreement to me. Mr. Lazreg, I have a very important question to you. Is there any promise or agreement that has been made to get you to plead guilty that is not found in this agreement?

THE DEFENDANT: No, sir.

(Official Tr. of Plea Proceedings at 11:4-25; 12:1-16.)

At Petitioner's sentencing hearing, the court also made clear to Petitioner that his guilty plea was a complete and separate matter from his ongoing immigration proceedings. The record is as follows:

> THE COURT: All right. Good luck, and you are subject to removal or deportation from the United States in a separate proceeding brought by the Department of Homeland Security, and the court has nothing to do with that.

(Mot. Ex. B "Sentencing Tr." at 14:18-21.)

In preparing this petition, Petitioner's current counsel contacted the attorney representing Petitioner at the time he entered his guilty plea. (See Letter to Pet'r Former Att'y (Dkt. 45-6)). Petitioner's former counsel offered the following account:

> ". . . the Govt. indicated during our meetings that if it was requested by Mr. Lazreg that they notify the INS of his attempts to cooperate with them, they would do so. However, he was warned several times by both myself and the AUSA that that US Attys. Office has no control or influence over the INS as to how he might be treated regarding any deportation proceedings in the future."

(Email from Pet'r Former Att'y (Dkt. 45-7).) Based on the record as a whole, the court finds that Petitioner's plea was voluntary. Thus, the court finds that Petitioner has not met his burden of offering substantial evidence to reasonably justify his subjective impression of the statements made to him by the government leading up to him entering his guilty plea.

### C. Continuing Legal Consequences

In finding Petitioner failed to meet the first and second prongs of the standard necessary to obtaining coram nobis relief, the court need not reach the third prong, namely that Petitioner demonstrate he "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Kovacs, 744 F.3d at 49 (citation omitted). Nonetheless, the

court finds that Petitioner has demonstrated that vacating his criminal conviction may remedy the legal consequences he continues to suffer as a result of his guilty plea.

"[T]here is no question" that "imminent deportation" satisfies the requirement of continuing legal consequences. United States v. Hernandez, 283 F. Supp. 3d 144, 154 (S.D.N.Y. 2018). Petitioner is currently facing deportation as a direct result of his 2009 criminal conviction.[5] (See Notice to Appear (Dkt. 45-5).) Petitioner would otherwise be eligible to receive a non-immigrant S Classification because of his cooperative efforts with the government. However, non-immigrants with S Classification status must still obtain lawful permanent residence before applying to withdraw removal proceedings. 8 C.F.R. § 236.4. A non-citizen convicted for violating any law or regulation relating to a controlled substance is ineligible to be admitted into the United State as a lawful permanent resident. 8 U.S.C. §1182(2)(A). Thus, vacating Petitioner's conviction would allow Petitioner to obtain lawful permanent residency and apply to withdraw removal proceedings.

## IV. CONCLUSION

For the foregoing reasons, the Petition (Dkt. 45) is DENIED. Petitioner failed to demonstrate "justified reasons for delay" in seeking coram nobis relief. See Foont, 93 F.3d at 80. The Clerk of Court is respectfully directed to enter judgment.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 26, 2019

NICHOLAS G. GARAUFIS
United States District Judge

---

[5] Under § 237(a)(A)(iii) of the Immigration and Nationality Act ("INA"), non-citizens are subject to deportation or removal based on the commission of an "aggravated felony." The trafficking in a controlled substance, including a drug trafficking crime, is considered an aggravated felony under the INA. 8 U.S.C. § 1101(a)(43).